UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREG C. S.[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 3:23-cv-3071-GCS |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, through counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB").[2]

PROCEDURAL HISTORY

On January 18, 2021, Plaintiff filed an application for DIB alleging a disability onset date of February 12, 2020. The claim was denied on July 23, 2021, and upon reconsideration on February 2, 2022. After holding an evidentiary hearing on November 17, 2022, an Administrative Law Judge ("ALJ") denied the application on February 8,

---

[1] Plaintiff's full name will not be used in this Memorandum & Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 8).

2023. On July 27, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1, 17). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issue:

1. The ALJ failed to properly evaluate credibility.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. "The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)). A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstratable by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and which is done for pay or profit. 20 C.F.R. § 404.1572.

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154

(internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. She determined Plaintiff meets the insured status requirements through December 31, 2024, and Plaintiff did not engage in substantial gainful activity since his alleged onset date of February 12, 2020. The ALJ found that Plaintiff had the following severe impairments: status post left shoulder diagnostic arthroscopy, subacromial decompression, and open distal clavicle excision; obesity, centrilobular emphysema; and tobacco use disorder. (Tr. 19). The ALJ considered all the Plaintiff's medically determinable impairments, including those not severe, when she assessed Plaintiff's residual functional capacity ("RFC"). (Tr. 20).

The ALJ did not doubt the existence of the problems Plaintiff described. However, the ALJ's primary concern was the severity of those problems. The ALJ found that Plaintiff's "medically determinable impairments significantly limit the ability to perform

basic work activities as required by SSR 85-28." (Tr. 19). Even so, the ALJ concluded: "I find the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 22).

The ALJ concluded that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes, or scaffolds and can engage in no more than occasional crawling. He cannot perform overhead reaching, pushing, or pulling with the left dominant upper extremity. With regard to reaching in other directions with the left upper extremity, the claimant can perform that function frequently. The claimant can frequently handle with left dominant upper extremity. However, there may be instances when he needs to use the right upper extremity exclusively. He cannot work at unprotected heights or around moving mechanical parts or other such hazards. The claimant can have no concentrated exposures to heat, cold, humidity, wetness, dust, fumes, or other pulmonary irritants such as toxic or caustic chemicals." (Tr. 20-21). Specifically, the ALJ found:

> The claimant's statements about the severity of his symptoms are somewhat incongruent with the record because the record shows he had some improvement following surgery. While he reportedly required a subsequent surgery (which is pending worker's compensation approval), he has been generally found to have normal strength and only minor reductions in his range of motion. Moreover, there are no well-supported provider

recommendations of greater work restrictions that persisted for 12 consecutive months, than what has been accounted for in the residual functional capacity set out above.

(Tr. 22)

. . . .

In sum, the record shows the claimant's shoulder injury resulted in ongoing range of motion limitations with pain. Although there was improvement from treatment and surgery within a year of his injury, he developed pain upon left shoulder motion. Dr. Paletta has expected further improvement with additional surgery to his biceps, evidenced in part by his pain relief from Dr. Blake's diagnostic testing. However, a thorough review of the record does not support the severity of weakness the claimant alleges; he has been found to have full strength by multiple providers and generally tenderness at most, but no severe pain. The record overall supports a finding that the claimant is capable of light work with left upper extremity restrictions and with restrictions on climbing, crawling, and exposures to hazards as defined in the above residual functional capacity above.

(Tr. 24).

The ALJ further found that Plaintiff could not perform his past relevant work. (Tr. 27). However, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 28). Thus, the ALJ found Plaintiff was not disabled. *Id.*

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum & Order. The Court finds the ALJ's summary of the record in her decision, when compared with the point raised by Plaintiff, is sufficiently comprehensive and, therefore, there is no need to summarize it again here.

**DISCUSSION**

Plaintiff argues that the ALJ failed to properly evaluate his pain. Particularly, Plaintiff maintains that the ALJ did not evaluate Plaintiff's inability to walk more than a few minutes because the repetitive motion of swinging the left arm causes pain. He also maintains that the ALJ did not evaluate his need for unscheduled breaks during the workday because any activity with his left arm/shoulder causes his left upper extremity to hurt. The Court disagrees with Plaintiff.

The ALJ is "in the best position to determine a witness's truthfulness and forthrightness . . . [and thus, the] court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–311 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–505 (7th Cir. 2004)). But, when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). When making the credibility determination, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p).[3] Additionally, while an ALJ is not required to provide a

---

[3] SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). Instead, ALJs are reminded to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of

complete written evaluation of every piece of testimony and evidence, reversal and remand is required where the ALJ "provides nothing more than a superficial analysis[.]" *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). As such, an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. Rather, the ALJ must "give[] specific reasons for [a credibility] finding, supported by substantial evidence." *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ must consider all credible evidence; however, an ALJ is not required to fully accept a plaintiff's perception of his or her own disability. *See Cass v. Shalala*, 8 F.3d 553, 555 (7th Cir. 1993).

First, Plaintiff takes issue with the ALJ's statements that his allegations were "not entirely consistent" with other evidence in the record. According to Plaintiff, the "not entirely consistent" language indicates that the ALJ applied an incorrect standard. This argument is borderline frivolous. The language is, as Plaintiff asserts, boilerplate language that appears in many ALJ decisions. However, the use of boilerplate language is harmless where the ALJ proceeds to give the reasons for her decision. *See Burmester*, 920 F.3d at 510. The use of the phrase "not entirely consistent" does not suggest that the ALJ used an incorrect standard. The ALJ cited the correct standard and discussed the relevant factors in assessing Plaintiff's allegations. (Tr. 21).

---

symptoms after they find that an individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," as consistent with the regulations. *Id.* Under either SSR version, the outcome of this case would be the same.

Further, Plaintiff contends the ALJ erred when she did not consider MPT Nicole Amos's finding that walking causes Plaintiff to experience increased shoulder pain and decreased arm swing.[4] While, the ALJ did not specifically note this piece of evidence, the ALJ was not required to do so. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Further, this complaint is contradicted by the ALJ's discussion of the medical evidence. *See* (Tr. 22-26). In fact, the ALJ found Ms. Amos's indication, that Plaintiff was "unable to reach overhead as persuasive because it is consistent with and supported by medical evidence, including subsequent treatment records and the well supported assessment from his other providers. However, her assessment that the claimant was capable of medium work was unpersuasive because later information showing left bicep and arm problems supported a restriction to light work with additional manipulative, reaching, and postural restrictions, . . . ." (Tr. 25-26). The Court notes that the ALJ determined Plaintiff to be *more* limited than what Ms. Amos found him to be, and the ALJ restricted him to only *light* work. (Tr. 20).[5]

---

[4] Mrs. Amos, MPT, evaluated Plaintiff in August 2021, for a Functional Capacity Evaluation, arising from a workers compensation claim related to Plaintiff's former job as a laborer. (Tr. 397-413).

[5] Ms. Amos's comments are as follows: "[r]equired job tolerances are based on worker's job description. The worker displayed function in the Light/Medium physical demand level. The worker's performance on this date is consistent with acceptable." (Tr. 398). Ms. Amos noted the following with respect to Plaintiff's subjective complaints: "[s]ubjective complaints of pain during the testing were consistent with displayed function. Pain ratings less than 7/10 indicate consistency between subjective pain ratings and observed movement patterns." (Tr. 399). Specifically, Ms. Amos found: "[d]uring the FCE the worker was observed to lift 30 lbs from floor to waist, which places the worker in the Medium physical demand level. The Performance

Next, Plaintiff argues that the ALJ failed to recognize that Dr. Matthew Gornet, on September 30, 2021, opined that the MRI "fits well with [Plaintiff's] exam," and found that Plaintiff's allegations were consistent with the medical evidence. This is not an accurate assessment of Dr. Gornet's findings. Specifically, Dr. Gornet noted:

> I have discussed with the patient that I do believe there is a cervical component to his pain and certainly this fits with his physical exam, particularly wrist volar flexion. My recommendation would be a steroid injection at C5-6 and C6-7. We will do two separate injections. I would also like an MRI arthrogram at follow-up and I have referred him to Dr. Paletta. Based on the information I have, I do believe his current symptoms and requirement for treatment are causally connected to his work injury of 11/9/19. He is on light duty for his neck, which would be a 10 pound limit with no overhead work.

(Tr. 432, 434).[6] While considering Plaintiff's medical treatment/records with Dr. Gornet, the ALJ found:

> Dr. Gornet's September 2021 assessment limiting the claimant to no lifting greater than 10 pounds [is] not persuasive. It is not supported by the record overall and subsequent evaluations by specialists including his providers as well as those with expertise evaluating workplace limitations. Moreover, it is not consistent with the limitation to light duty he also provided in his statement. However, with respect to Dr. Gornet's restriction on overhead reaching I find it persuasive because it is consistent with the assessments of

---

Criteria Profile is most consistent with acceptable effort. Based on the level of effort displayed, the demonstrated physical tolerances may be used to project actual physical functional ability at this time." *Id.*

[6] Two months later, on November 29, 2021, Dr. Gornet examined Plaintiff for a follow-up. Dr. Gornet stated that the "[e]xam shows a mild decrease in deltoid at 4+/5 otherwise, he is 5/5 in all groups." (Tr. 433). Dr. Gornet also noted that the two steroid injections in his cervical spine have helped, that Plaintiff is still having some pain in his anterior left shoulder, that there was no rotator cuff tear, and that there was fraying of the superior labrum, but no linear tear. Dr. Gornet further noted that "his cervical spine is cleared," and that he is "released to full duty no restrictions on his cervical spine." (Tr. 433).

other providers and evaluations, including those of PT Amos, Dr. Nogalski and Dr. Paletta.

(Tr. 26). The Court finds no error in the ALJ's assessment of Dr. Gornet's treatment regarding Plaintiff.

Additionally, the Court finds that there is no error as to ALJ's assessment of Dr. Nogalski's treatment regarding Plaintiff. Specifically, Dr. Nogalski found:

> [Plaintiff] appears able to work at a level of light duty at minimum. Based on his exam findings as well as numerous subjective complaints that are inconsistent with objective findings, I am not certain that the functional capacity evaluation really reflects his true work demands. He has, however, placed himself in a position where he cannot demonstrate his ability to work at full duty. Therefore, based upon his physical performance in this functional capacity evaluation, I believe he has limited himself to no lifting more than 30 pounds floor to waist and no lifting more than 10 pounds up to shoulder. He was not able to perform overhead lifting. I would advise these restrictions based upon his performance in this test. I do not believe, though, that this truly represents a clear picture of his entire functional capacity. He also demonstrated an ability to only push or pull up to 28 pounds. He has limited himself to this level, as well. His limitations as set forth in the FCE do not correlate with objective findings in his exam today, nor with objective testing done post-operatively.

(Tr. 469-470). As to Dr. Nogalski's finding, the ALJ noted:

> As for Dr. Nogalski's March 2022 assessment (12/F6-7). He opined the claimant capable of at least light work with no overhead reaching but also indicated he could lift 30 pounds floor to waist and 10 pounds up to shoulder, and push and pull up to 28 pounds with his left upper extremity. Dr. Nogalski's assessment is generally consistent with his examination findings as well those of other providers and he has expertise evaluating work limitations. Consequently, I find his restriction to light work persuasive but note there is an inconsistency because light work may require lifting up to 20 pounds and he has limited the claimant to 10 pounds up to shoulder level. Nevertheless, the claimant's residual functional capacity accounts for reaching with the left

Page **11** of **14**

upper extremity from frequently to not at all which accommodates lifting up to shoulder level.

(Tr. 26). Thus, the Court does not find that the ALJ erred.

Finally, Plaintiff presented an argument as to Dr. Paletta's review on August 3, 2022, of Plaintiff's previous MRI and shoulder injections from March 2022, which revealed that Plaintiff's biceps tendon was unstable and that he needed surgery. During this review, Dr. Paletta determined that most of Plaintiff's pain was coming from his biceps tendon and that he had full range of motion in the left shoulder. As such, he recommended that Plaintiff have the surgery. Dr. Paletta noted that "return to full duty" after surgery was a few months. (Tr. 548-549). The ALJ noted these findings:

> Dr. Paletta's August 2022 assessment restricting the claimant from overhead work and overhead reaching, lifting more than 1 pound above his chest and pushing and pulling over 10 pounds with the left upper extremity. I find his assessment generally consistent with the record overall and it is supported by his examinations findings as well as the claimant's course of treatment and the other persuasive restrictions as detailed above. I note that the claimant's residual functional capacity accounts for reaching with the left upper extremity from frequently to not at all and no overhead reaching which accommodates the reduced lifting above his chest. Also, his pushing and pulling restriction is accommodated with one-handed work such that he can avoid the affected upper extremity altogether.

(Tr. 26). There is nothing to suggest that Dr. Paletta's August 2022 assessment required a stricter RFC. The ALJ accounted for the situation/pain of the left shoulder/arm in her RFC by including "one-handed work." The Court finds no error in the ALJ's ultimate finding.

The ALJ in this case considered all credible evidence including but not limited to: Plaintiff's statements, Plaintiff's overall treatment, the nature of his treatment, Plaintiff's improvement with surgery and other treatment, and unremarkable objective evidence. Further, the ALJ built a logical bridge between such evidence and her determination. The ALJ was not required to entirely accept Plaintiff's statements about his disability when such statements were not supported by objective medical evidence, as such a lack of objective medical evidence may indicate symptom exaggeration. *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). The record does not reflect that a healthcare provider ever recorded complaints of such severe limitations as stated by Plaintiff. Therefore, by assessing the medical records and using professional opinions to make her determination, the ALJ properly supported her findings with substantial evidence.

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. He has not identified any error requiring remand. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing the evidence. *See Burmester*, 920 F.3d at 510, *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## CONCLUSION

After careful review of the record, the Court is convinced that the ALJ committed no errors of law, and her findings are supported by substantial evidence. Accordingly,

the Court **AFFRIMS** the final decision of the Commissioner of Social Security in denying Plaintiff's application for disability benefits. The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of the Commissioner.

    **IT IS SO ORDERED.**

    **DATED: November 20, 2024.**

                                                    Digitally signed by Judge Sison
                                                  Date: 2024.11.20 14:30:52 -06'00'

                                       **GILBERT C. SISON**
                                       **United States Magistrate Judge**